Joshua Woolridge v. California Department of Corrections, CV 08-02491 CTB

Order re 42 U.S.C. § 1983 Complaint

Plaintiff Joshua Woolridge ("Woolridge"), a California prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against the California Department of Corrections.  Woolridge claims that he was retaliated against for exercising his right to file prison grievances, that prison officials negligently placed him in a gang-member cell block despite the fact he was not a gang member, that he has been denied access to adequate recreation, that he has been denied access to the law library, that he has been refused proper medical care for his Type I diabetes, that he is not receiving proper mental health treatment, and that prison officials consume state food without paying for it.  Woolridge has not exhausted his administrative remedies with respect to his retaliation claim.  He lacks standing to challenge the prison official's failure to pay for state food they consume.  With respect to all of his other claims he has failed to allege sufficient facts to state a claim for relief.  Woolridge's claim relating to prison guard's payment for food is DISMISSED with prejudice.  His other claims are DISMISSED without prejudice.

I.      Background

Woolridge is currently a prisoner at Kern Valley State Prison in Delano, California.  (Docket No. 18.)  He filed his complaint on July 9, 2008.  (Docket No. 1.)  The case was assigned to a magistrate judge and then a district court judge before it was reassigned on December 23, 2008, to Judge Carlos T. Bea of the Ninth Circuit, who sits by designation.  (Docket No. 17.)

Woolridge's complaint alleges as follows.  Woolridge was transferrred to the Sierra Facility at the California State Prison in Lassen County on February 20, 2008.  (Compl. 2.)  The Sierra Classification Committee housed him in a "crip dorm"[1] despite the fact Woolridge is not a gang member.  (Id. at 11.)  Since his arrival date, he had requested, on numerous occasions, an immediate transfer due to "safety concerns."  (Id.)

---

[1] This refers to a dormitory for members of the "Crip" gang.

1

On May 30, 2008, Woolridge was attacked in the "Crip dorm" by fellow inmate Aaron Snell, a member of the 69th Blvd. Manifa Crip gang from Long Beach.  (Id. at 7.)  Woolridge suffered a broken left index finger, and several fractured ribs as a result.  (Id. at 2.)  Snell also stole some of Woolridge's personal property.  (Id.)  On June 6, 2008, Woolridge had surgery to repair the broken finger.  (Id.)

After the fight, on May 30, 2008, Woolridge was moved to administrative segregation.  (Id. at 10.)  Officer T. Williams was assigned to investigate the fight.  (Id.)  On June 11, 2008, Woolridge filed a Form 602 Inmate Appeal grievance against the Sierra Classification Committee Captain E.F. Musser; Lieutenant R. P. Roman; Correctional Counselor II, A. Fiegner; and Correctional Counselor I, D. Hurh for negligently and with "reckless disregard" housing Woolridge in a "Crip dorm" despite the fact Woolridge was not a gang member.  In the grievance, Woolridge also blamed the officials for the theft of his property.  (Id. at 11.)  On June 13, 2008, in retaliation for Woolridge's June 11 grievance, Officer Williams "illegally concluded" that Woolridge, not Snell, started the May 30 fight.  (Id. at 11–12.)  On June 16, 2008, also in retaliation for Woolridge's June 11 grievance, Lieutenant R. P. Roman gave Woolridge a CDC-115 RVR for alleged "Battery on an Inmate" for his fight with Snell. (Id. at 12.)  On June 19, 2008, Woolridge was told he would remain in administrative segregation for ninety days pending resolution of the CDC-115 RVR.  (Id. at 3.)

II.     Legal Standard

Under the Prison Litigation Reform Act ("PLRA"), a federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity, or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  In its review, this Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  Id. § 1915A(b)(1)–(2); Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).  Pro se pleadings must, however, be liberally construed.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

III.    Discussion

    A.     Named Defendants

2

The only defendant Woolridge has named in the caption of his complaint is the California Department of Corrections. However, the state is not a proper defendant to this suit because "a State is not a person within the meaning of § 1983."[2] Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989). Because the California Department of Corrections is an arm of the state government, Woolridge has no cause of action against it. All claims against the California Department of Corrections are therefore dismissed with prejudice.

But, that is not the end of Woolridge's suit. The Ninth Circuit has held that "even if an improper defendant is indicated in the caption, [a court] may consider a complaint to have named the proper defendant if the allegations made in the body of the complaint make it plain that the party is intended as a defendant." Barsten v. Dep't of the Interior, 896 F.2d 422, 423 (9th Cir. 1989). Here, as explained below, Woolridge has named the proper defendant with respect to some of his claims.

   B.   Exhaustion

The exhaustion requirement of the PLRA states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[3] Under the PLRA, a prisoner "may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed. It

---

[2] 42 U.S.C. § 1983 provides a cause of action only against a *person* who acts under color of state law and deprives a citizen of his constitutional rights.

[3] In the California Department of Corrections ("CDC"), a prisoner has the right to appeal administratively "any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Admin. Code tit. 15, § 3084.1(a). To exhaust these administrative remedies, a prisoner must proceed through several levels of appeal: (1) informal resolution; (2) formal written appeal on a CDC 602 inmate appeal form; (3) second-level appeal to the institution head or designee; and (4) third-level appeal to the Director of the CDC. Id. § 3084.5; Brodheim v. Cry, 584 F.3d 1262, 1265 (9th Cir. 2009). A final decision from the Director's level of review satisfies the exhaustion requirement. Aidnik v. Cal. Med. Facility, No. 2:08-cv-02583-HDM-RAM, 2009 WL 3789223, at *2 (E.D. Cal. Nov. 10, 2009) (unpublished disposition).

would be inconsistent with the objectives of the statute to let him submit his complaint any earlier than that." Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006). Although PLRA exhaustion is an affirmative defense, the Court may sua sponte dismiss the amended complaint if Woolridge's factual allegations, taken as true, establish nonexhaustion. See Jones v. Bock, 549 U.S. 199, 214–15 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003). Further, this court must dismiss any nonexhausted claim even if that claim has gone through third-level review while suit was pending, because it was not exhausted at the time Woolridge filed suit. See, e.g., McKinney v. Carey, 311 F.3d 1198, 1200–01 (9th Cir. 2002) (per curiam) (holding the language of § 1997e(a) mandates that actions be dismissed unless the prisoner exhausted his available administrative remedies *before he filed suit*, even if the prisoner fully exhausted while suit was pending).

Here, Woolridge submitted a motion to this court on October 29, 2008 (Docket No. 15) that establishes he did not exhaust his administrative remedies with respect to his retaliation claim before he filed suit. Woolridge's motion, in fact, is styled as a motion to enjoin the California Department of Corrections to answer his inmate grievance related to his retaliation claim. Woolridge states in the motion that on June 16, 2009, he received a CDC-115 RVR in a "blatant act of retaliation and reprisal. (Id.) He next states that on July 17, 2008, he filed a grievance to correct the problem. (Id.) But, Woolridge filed his complaint in this case on July 9, 2008, eight days before he filed his grievance. (Docket No. 1.) Because Woolridge failed to exhaust his administrative remedies *before he filed suit*, this court must sua sponte DISMISS his retaliation claim without prejudice.[4] Woolridge may re-file his complaint once his prison grievance has gone through third-level review.[5]

---

[4] The Court must treat the failure to exhaust as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss on such grounds, "the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1120. Because the Court finds Woolridge has not exhausted his administrative remedies, the proper remedy is dismissal without prejudice. Id.

[5] The court notes that Woolridge's October 29 motion alleges that the third-level of review is not responding to his grievance. The third-level response, which Woolridge attached to the motion, states that Woolridge's appeal is being screened-out and returned to Woolridge because it did not comply with the correct

C.   Failure to State a Claim

   1.   Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must allege sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility" if the plaintiff's complaint states facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. Even after Twombly, "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (internal citations and quotation marks omitted). If the complaint fails to state a claim, the Court has discretion to dismiss the complaint with or without leave to amend. Lopez, 203 F.3d at 1124, 1130.

To state a claim under § 1983, Woolridge must allege (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

   2.   Eighth Amendment

Anderson raises several claims about the conditions of his confinement. For a prisoner to state a claim that his conditions of confinement violate the Eighth Amendment prohibition against cruel and unusual punishment, he must allege: (1) "a substantial risk of serious harm"; and (2) that prison officials acted with "deliberate indifference" to that risk. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference requires that a prison official "know[ ] of and

---

appeal procedures. (Docket No. 15, Exh. A.) Even if officials erred when they screened out Woolridge's appeal, and the prison were preventing Woolridge from exhausting his grievances, that condition would have to obtain *before* Woolridge filed suit. See McKinney, 311 F.3d at 1200–01. Because Woolridge had not even attempted to exhaust his administrative remedies before he filed suit (he filed suit on July 9, 2008, he filed his grievance on July 17, 2008), this court must dismiss for failure to exhaust. Id.

5

disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

      a.  Woolridge's Claim of Deliberate Indifference to Safety

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. at 833. Woolridge claims that Sierra Classification Committee Captain E. F. Musser, Lieutenant R. P. Roman, Correctional Counsel A. Fiegner, and Correctional Counselor D. Hurh violated this duty when they housed him in a "Crip dorm" despite the fact that he was not a gang member, and for failing to transfer him upon his request. Woolridge's complaint, however, fails to state a claim for an Eighth Amendment violation. Woolridge has not alleged facts that would "allow[ ] the court to draw the reasonable inference that the defendant[s] are liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

Woolridge has failed to allege any facts that establish the defendants were aware of a substantial risk of harm to Woolridge's safety, and that they consciously disregarded that risk, i.e., that the defendants acted with deliberate indifference to his safety. See Farmer, 511 U.S. at 837. Woolridge was attacked by another inmate, but Woolridge does not allege that prison officials were made aware of any threats against Woolridge or that prison officials were deliberately indifferent to facts that would have put them on notice of a risk that Woolridge would be attacked.

Woolridge alleges only that he "had humbly requested on numerous occasions for a[n] immediate transfer since [his] arrival date of February 20, 2008. . . due to [his] security and safety concerns." (Compl. 2.) But, Woolridge does not allege what his "security and safety concerns" were, or to whom he communicated them. Further, although Woolridge states in his complaint that he was "negligently" housed in a gang dorm despite the fact he is not a gang member, he does not allege that prison officials knew he was not a gang member or that prison officials were deliberately indifferent to facts that would have made them aware he was not a gang member.[6] In short, Woolridge has failed to allege sufficient facts to

---

[6] Negligence is not sufficient to give rise to an Eighth Amendment violation. Farmer, 511 U.S. at 835.

state a claim that the defendants consciously disregarded a substantial risk of serious harm to Woolridge. This claim is DISMISSED without prejudice.

      b.  <u>Woolridge's Claim of Denial of Recreational Activities</u>

  "Although exercise is one of the basic human necessities protected by the Eighth Amendment, a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997).

  Woolridge has failed to allege sufficient facts to state a claim for an Eighth Amendment violation based on the denial of outdoor exercise. Woolridge alleges only that he "has been willfully denied recreational activities since his placement in administrative segregation on May 31, 2008." (Compl. 3.) Because this court must construe pro se complaints liberally, Woolridge's allegation that he was denied "recreational activities" is sufficient to allege that he was denied outdoor exercise. However, that is not sufficient to state a claim for an Eighth Amendment violation. First, Woolridge does not allege that any particular defendant has denied him outdoor exercise. As with all conditions of confinement claims, a prisoner-plaintiff must still allege that the defendant was deliberately indifferent to his need for exercise. <u>May</u>, 109 F.3d at 565. Woolridge has failed to make any such allegation. Second, Woolridge has not sufficiently alleged that his deprivation was "substantial." Woolridge alleges he has been denied recreational activities since his placement in administrative segregation on May 31, 2008. His complaint was filed on July 9, 2008. That is little over a month, which is only a temporary deprivation of outdoor exercise. <u>See id.</u> (holding that a three-week deprivation of exercise was only temporary and, as such, did not rise to the level of an Eighth Amendment violation). Because Woolridge has failed to allege facts that state a claim for relief, this claim is DISMISSED without prejudice.

      c.  <u>Woolridge's Claim of Deliberate Indifference to a Serious Medical Need</u>

  "An official's deliberate indifference to a substantial risk of serious harm to an inmate—including the deprivation of a serious medical need—violates the Eighth Amendment." *Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2009). To state a claim under the Eighth Amendment for failure to provide medical treatment, the plaintiff must allege first, "a serious medical need by demonstrating

7

that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain;" and second, that the "defendant's response to the need was deliberately indifferent." *Id.* at 1095. "The second prong requires both (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.*

Woolridge's complaint fails to state a claim for deliberate indifference to a serious medical need. Woolridge alleges only that he "has been refused proper medical care and treatment of his Type I diabetes and adequate care of his broken left index finder by the medical staff." (Compl. 3.) This is a sufficient allegation under the first prong. Type I diabetes constitutes a serious medical need. *Lolli v. County of Orange*, 351 F.3d 410, 420 (9th Cir. 2003).

However, this allegation is insufficient under the second prong because he does not allege facts that are sufficient to state a claim that the medical staff at the prison was deliberately indifferent to his medical needs. First, he does not allege that the medical staff was aware of his diabetes, or that the staff was deliberately indifferent to facts that would have made the staff aware of his diabetes. The medical staff could not consciously disregard his medical needs unless the medical staff was aware of those needs. Second he does not allege that he suffered *any* harm from the alleged lack of treatment as required to state a claim. Because Woolridge has failed to allege sufficient facts to state a claim for deliberate indifference, this claim is DISMISSED without prejudice.

            d.      Woolridge's Claim of Deliberate Indifference to a Mental Health Need

The Eighth Amendment guarantees that inmates "receive constitutionally adequate medical and mental health care." *Conn*, 592 F.3d at 1094. The same standard applies to a mental health need as any other medical need. *Id.*

Woolridge's complaint fails to state a claim for deliberate indifference to a mental health need. Woolridge alleges only that he "is not receiving proper mental health treatment for being illegally housed in a cell for 24 hours a day 7 days a week without recreation." (Compl. 3.) First, Woolridge does not allege that he suffers from a serious mental health condition. Second, he does not allege that anyone at the prison was aware he suffered from a serious mental health condition, or was deliberately indifferent to facts that would have made a prison official

aware Woolridge suffered a serious mental health condition. Third, he does not allege that he has suffered any harm from the failure to treat any mental health problem, as required to state a claim. This claim is therefore DISMISSED without prejudice.

### 3. Access to the Courts

A prisoner has a "right of access to the courts." Lewis v. Casey, 518 U.S. 343, 350 (1996). But, a prisoner has no "abstract, freestanding right to a law library or legal assistance," those are simply one means by which a prison can ensure "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Id. at 351. Further, an inmate alleging violation of his right of access to the courts must show an actual injury. Id. at 349. He must show that the prison's inadequate legal resources actually "hindered his efforts to pursue a legal claim." Id. at 351. This means the prisoner must point to some adverse legal consequence that he suffered because of the prison's deficient legal resources, such as the dismissal of a complaint. Id.

Woolridge's complaint fails to state a claim for denial of access to the courts. Woolridge alleges only that he "has been maliciously denied legal copies by the administrative segregation legal officer J. Crawford, and wilfully denied access to the law library for research on his pending ongoing legal cases without justification." (Compl. 3.) However, Woolridge has not alleged any actual legal injury as a result of Officer Crawford's actions. He does not allege how J. Crawford has stymied his success in any of his lawsuits. This claim is therefore DISMISSED without prejudice.

### 4. Correctional Officer's Consumption of Food Without Payment

Woolridge alleges as a federal civil rights violation that "[e]mployees (correctional officers) consume state food without paying daily violating the Title ISCCR 3407." (Compl. 3.) Woolridge lacks standing to challenge this action because he is not injured by it. To establish an injury in fact, the plaintiff must allege "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The correctional officers' failure to pay for their food is not an invasion of Woolridge's legally protected interests. He therefore has no standing to bring this claim. Because no amendment will cure Woolridge's lack of

standing to bring this challenge, this claim is DISMISSED with prejudice.

IV.     Conclusion

    IT IS HEREBY ORDERED:

    1.     Woolridge's application to proceed *in forma pauperis* is granted.

    2.     Woolridge fails to state any cognizable claim against defendant California Department of Corrections.  All of his claims against the California Department of Corrections are DISMISSED with prejudice.

    3.     Woolridge does not have standing to bring his claim against unnamed correctional officers who consume state food without paying.  That claim is DISMISSED with prejudice.

    4.     Woolridge has failed to exhaust his administrative remedies with respect to his claim that prison officials retaliated against him for filing prison grievances.  Woolridge cannot cure his failure to exhaust by amending his current complaint.  Rather, he must file a new complaint that states a claim for retaliation after he has exhausted his administrative remedies.  This claim is DISMISSED without prejudice.

    5.     Woolridge fails to state a cognizable Eighth Amendment claim against any defendant, or fails to name a defendant.  Each of his Eighth Amendment claims are therefore DISMISSED without prejudce.

    6.     Woolridge fails to state a claim that correctional officer J. Crawford denied him access to the courts.  This claim is DISMISSED without prejudice.

    7.     If Woolridge wishes to file an amended complaint, he shall file a motion to amend and a proposed amended complaint within sixty days of this Order.  Failure timely to comply with this Order may result in dismissal of this action for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41(b).

    DATED this 30th day of June, 2010.

                                     /s/ Carlos T. Bea

        CARLOS T. BEA
        United States Circuit Judge, sitting by designation